HERBERT SMITH FREEHILLS
NEW YORK LLP
Peter J. Behmke
Michael P. Jones
Barron M. Flood
450 Lexington Avenue
New York, New York 10017
Tel: (917) 542-7600
Fax: (917) 542-7601
Email: Peter.Behmke@hsf.com
Michael.Jones@hsf.com
Barron.Flood@hsf.com

*Attorneys for OceanConnect Marine, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SEAPOINT SHIPPING, LTD.,

Plaintiff,

vs.

OCEANCONNECT MARINE, INC., and,
MINERVA BUNKERING (USA) LLC,

Defendants.

Case No. 1:20-cv-6908 (JMF)

**OCEANCONNECT MARINE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT I**

# TABLE OF CONTENTS

**Page No**

**TABLE OF AUTHORITIES** ..... ii

**PRELIMINARY STATEMENT** ..... 1

**STATEMENT OF ALLEGED FACTS** ..... 2

I. The Contract ..... 2

II. Allegations Concerning the Marine Fuel ..... 4

III. The Asserted Causes of Action ..... 5

**ARGUMENT** ..... 6

I. Count I Is Barred for Failure to Provide Timely Notice ..... 6

II. Count I Is Barred by the Contract's Limitation of Liability ..... 7

III. At a Minimum, Count I Should Be Dismissed to the Extent It Seeks Damages In Excess of $50,000 ..... 9

**CONCLUSION** ..... 10

# TABLE OF AUTHORITIES

**Page No(s)**

**Cases**

*Am. Dredging Co. v. Plaza Petroleum*,
799 F. Supp. 1335 (E.D.N.Y. 1992) ........ 8

*Berg v. Empire Blue Cross and Blue Shield*,
105 F. Supp. 2d 121 (E.D.N.Y. 2000) ........ 3

*DynCorp v. GTE Corp.*,
215 F. Supp. 2d 308 (S.D.N.Y. 2002) ........ 9

*Indus. Risk Ins. v. Port Auth. of N.Y. & N.J.*,
387 F. Supp. 2d 299 (S.D.N.Y. 2005) ........ 7

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
84 N.Y.2d 430 (1994) ........ 7

*Net2Globe Int'l v. Time Warner Telecom of N.Y.*,
273 F. Supp. 2d 436 (S.D.N.Y. 2003) ........ 7

*Pacs Indus., Inc. v. Cutler-Hammer, Inc.*,
103 F. Supp. 2d 570 (E.D.N.Y. 2000) ........ 9

*PNC Bank, N.A. v. Wolters Kluwer Fin. Servs.*,
73 F. Supp. 3d 358 (S.D.N.Y. 2014) ........ 8

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013) ........ 6

*Roneker v. Kenworth Truck Co.*,
977 F. Supp. 237 (W.D.N.Y. 1997) ........ 7, 8

*STX Panocean (UK) Co. v. Glory Wealth Shipping Pte. Ltd.*,
560 F.3d 127 (2d Cir. 2009) ........ 2

**Statutes**

N.Y. U.C.C. § 1-302 ........ 6

N.Y. U.C.C. § 2-607 ........ 6

N.Y. U.C.C. § 2-719 ........ 9

**Rules**

Fed. R. Civ. P. 12 ........ 3

Fed. R. Civ. P. Supp. R. B ........ 2

OceanConnect Marine, Inc. ("OceanConnect") respectfully submits this memorandum of law in support of its motion to dismiss Count I of the Verified Complaint (ECF No. 1) (the "Complaint" or "Compl.") filed by Seapoint Shipping, Ltd. ("Plaintiff").

**PRELIMINARY STATEMENT**

Plaintiff alleges that its agent, Athenian Sea Carriers, Ltd. ("Athenian Sea Carriers") purchased marine fuel from OceanConnect for use by Plaintiff's vessel, the *MV Captain X. Kyriakou* (the "Vessel"). OceanConnect was the "contract supplier" of the fuel, meaning that OceanConnect did not physically procure the fuel or deliver it to the Vessel. Instead, OceanConnect stood between Plaintiff and the physical supplier of the fuel, Minerva Bunkering (USA), LLC ("Minerva"), pursuant to back-to-back sales contracts between Plaintiff and OceanConnect, on the one hand, and OceanConnect and Minerva, on the other.

Plaintiff alleges that the marine fuel delivered by Minerva to the Vessel did not meet a specification of the contract governing the sale by OceanConnect to Plaintiff (the "Contract"), and that use of the fuel caused Plaintiff to incur additional testing and repair costs, "loss of hire" damages, and de-bunkering and disposal costs, in the amount of $677,472.

Count I asserts a claim against OceanConnect for an alleged breach of the Contract. As set forth below, Count I is barred by the terms of the Contract, and should be dismissed.

*First*, the Contract contains an industry standard notice provision that required Plaintiff to provide notice of any quality claim within seven days of delivery, or be "time-barred from making a claim." The Complaint does not (and cannot) allege that Plaintiff or its agent complied with this requirement, and its purported claim is therefore barred.

*Second*, the Contract prohibits the recovery of any alleged loss other than "the difference in value of the Product and the goods actually supplied" (which is not claimed), and specifically prohibits recovery of the categories of loss sought by Plaintiff. For this additional reason, Count I should be dismissed.

*Finally*, the Contract provides that "in no event" shall OceanConnect be responsible for losses that "exceed the amount of $50,000." Accordingly, at a minimum, Plaintiff's claim should be dismissed to the extent it seeks damage in excess of that contractual limit.

Plaintiff and its agent are both sophisticated marine industry participants, and agreed to this contractual allocation of risk and loss as part of the bargain to purchase marine fuel from OceanConnect at an economical price. Plaintiff should not be permitted to avoid that bargain now, and its claim against OceanConnect should be dismissed.[1]

## STATEMENT OF ALLEGED FACTS

### I. The Contract

On December 23, 2019, Athenian Sea Carriers, as the commercial and technical manager of the Vessel (Compl. ¶ 2), "contacted OceanConnect on behalf of the Plaintiff to arrange the purchase of bunker fuel for the Vessel" (*id.* ¶ 8). Through Athenian Sea Carriers, "Plaintiff contracted with OceanConnect to provide bunker fuel for the Vessel." (*Id.* ¶ 20).

[1] Plaintiff also asserts that it will seek an attachment order in this district pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims. (Compl. ¶ 37). OceanConnect reserves all rights and objections should Plaintiff seek such an order, but notes that any such attempt by Plaintiff as against OceanConnect would be frivolous. Among other reasons, OceanConnect may be "found within the district" within the meaning of Rule B because it has consented to jurisdiction here, and has been served with the Summons and Complaint via its registered agent in this forum. *See STX Panocean (UK) Co. v. Glory Wealth Shipping Pte. Ltd.*, 560 F.3d 127, 133 (2d Cir. 2009).

The terms of that agreement are reflected in a Marine Fuel Confirmation, which expressly incorporated OceanConnect's Standard Terms and Conditions of Sale (the "T&Cs"). True and correct copies of the Marine Fuel Confirmation and the T&Cs, which together comprise the Contract, are attached to the Behmke Declaration as Ex. A and Ex. B, respectively.[2]

OceanConnect was not the physical supplier of the marine fuel to be sold under the Contract. To fulfill the Contract, OceanConnect entered into an agreement with Minerva for the purchase of the marine fuel, pursuant to which Minerva would procure the fuel and supply it directly to the Vessel via Minerva's delivery barge. (Compl. ¶¶ 9, 12).

Consistent with industry standards, the Contract between OceanConnect and Plaintiff contained allocations of risk and loss if the marine fuel delivered by Minerva did not meet specifications. Relevant to this motion, the Contract required Plaintiff to provide notice to OceanConnect of any purported quality claim within "seven (7) days from the date of Delivery," absent which, Plaintiff "shall be time-barred from making a claim." (Ex. B §§ 12.05(f), 12.08).

Plaintiff also acknowledged its responsibility to test and ensure the suitability of the marine fuel *prior* to use on the Vessel, and agreed that OceanConnect would not be responsible for any damage to the Vessel caused by the delivery of defective marine fuel. Specifically, pursuant to Section 15.02 of the T&Cs:

---

[2] "Behmke Declaration" refers to the Declaration of Peter J. Behmke in Support of OceanConnect Marine, Inc.'s Motion to Dismiss, submitted herewith. Because Count I is based on the Contract, the Court may consider the terms of the Contract when deciding this Rule 12(b)(6) motion. *See Berg v. Empire Blue Cross and Blue Shield*, 105 F. Supp. 2d 121, 126 (E.D.N.Y. 2000).

> Buyer acknowledges and warrants that it is Buyer's responsibility to test the Product delivered and to ensure that it is proper in all respects prior to use of such Product on Buyer's Vessel. Accordingly, the Company shall not be responsible for any damage to Buyer's Vessel, including without limitation, its machinery, tanks or their contents, caused by Delivery of improper, defective or the wrong type of Product.

(Ex. B. § 15.02).

The Contract further: (i) allocated to Plaintiff the risk of losses other than "the difference in value of the Product and the goods actually supplied"; (ii) precluded the recovery of consequential damages; and (iii) limited any recoverable loss to $50,000. Section 15.01 of the T&Cs provided:

> [T]he Company shall not be liable to the Buyer for any loss or damage, including loss of profit or any other consequential damages or loss whatsoever arising from any cause whatsoever . . . beyond the difference in the value of the Product and the goods actually supplied, but in no event to exceed the amount of $50,000.

(Ex. B. § 15.01). The Contract then defined prohibited consequential damages to include the categories of loss sought by Plaintiff, as follows: "Consequential damages or loss includes lost profits and any and all damage claims involving . . . contracts and/or prospective contracts, detention, demurrage, charter hire, crew wages, towage, pilotage, lost profits, barge delivery charges and increased . . . costs or expenses in obtaining replacement fuel." (*Id.*).

The Contract is "subject to U.S. maritime law" and "[t]o the extent U.S. maritime law does not provide a rule of law, New York law applies." (*Id*. § 16.04).

## II. Allegations Concerning the Marine Fuel

On or about January 12, 2020, Minerva delivered the marine fuel to the Vessel. (Compl. ¶¶ 10-11). On January 29, 2020 (seventeen days after delivery), Athenian Sea

Carriers notified OceanConnect that the marine fuel was allegedly off-specification with respect to the requirement for total sediment potential. (*Id.* ¶¶ 13-14).

Between February 8 and April 3, 2020, the Vessel continued to consume the marine fuel. (*Id.* ¶ 16). Plaintiff alleges that, after consuming approximately 3,000mt of the marine fuel, Plaintiff determined that the Vessel could not consume 300mt of the remaining fuel and that it would need to be de-bunkered in Singapore. (*Id.* ¶ 17). After loading additional marine fuel in Japan, the Vessel sailed to Singapore, where the remaining 300mt of marine fuel purchased under the Contract was de-bunkered. (*Id.*).

## III. <u>The Asserted Causes of Action</u>

Count I is asserted against OceanConnect, for breach of the Contract, based on an alleged failure "to provide bunker fuel that met the specifications which were agreed by the parties." (*Id.* ¶¶ 20-21). Plaintiff seeks $677,472 in damages, comprised of "cost of resources and manpower" associated with consuming the fuel, costs for the purchase of additional marine fuel in Japan, sampling and testing costs, costs of de-bunkering and disposal of the 300mt of remaining fuel, and "loss of hire" while de-bunkering in Singapore. (*Id.* ¶ 18). As explained below, all of these categories of loss are barred under the Contract.

Counts II and III are tort claims asserted against Minerva only, and seek the same alleged damages.

## ARGUMENT

Count I should be dismissed pursuant to the express terms of the Contract, and the allocations of risk and loss to which Plaintiff agreed when it purchased the marine fuel.

### I. Count I Is Barred for Failure to Provide Timely Notice

Count I should be dismissed because Plaintiff does not (and cannot) plead that it provided notice to OceanConnect of any quality issue within seven days of delivery.

The Contract provided that OceanConnect must be notified of any quality claim within seven days of delivery, or Plaintiff "shall be time-barred from making a claim." (Ex. B §§ 12.05(f), 12.08). Pursuant to sections 1-302(b) and 2-607(3) of the Uniform Commercial Code, a contractually fixed notice requirement must be enforced if it is "not manifestly unreasonable," and a buyer that fails to comply shall "be barred from any remedy." N.Y. U.C.C. §§ 1-302(b), 2-607(3). Further, the burden is on the plaintiff to plead compliance with the notice requirement, and its failure to do so requires dismissal of the claim at the pleading stage. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("Here, plaintiffs have failed to allege they provided Walgreens with timely notice of the alleged breach of warranty. Accordingly, plaintiffs' breach of warranty claims are dismissed.").

It is undisputed that Plaintiff did not provide notice of any quality issue to OceanConnect within seven days of delivery, after which the risk of loss associated with quality issues was contractually shifted to Plaintiff. Count I should therefore be dismissed.

## II.     Count I Is Barred by the Contract's Limitation of Liability

Count I should be dismissed for the additional reason that Plaintiff's claimed damages are barred by the limitation of liability in the Contract.

"The New York Court of Appeals has declared that 'a limitation on liability provision in a contract represents the parties' Agreement on the allocation of risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor. . . .'" *Net2Globe Int'l v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 450 (S.D.N.Y. 2003) (quoting *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430 (1994)).  The limitation of liability should be enforced at the pleading stage, otherwise "contracting parties would be stripped of the substantial benefit of their bargain[.]" *Indus. Risk Ins. v. Port Auth. of N.Y. & N.J.*, 387 F. Supp. 2d 299, 306-308, n.2 (S.D.N.Y. 2005) (collecting cases).

Section 15.01 of the T&Cs limits recoverable damages to "the difference in the value of the Product and goods actually supplied."  (Ex. B. § 15.01).  Count I does not seek recovery for any difference in value for the marine fuel as warranted and "actually supplied."  Because the losses sought in Count I are beyond those for which OceanConnect could even potentially be liable, Count I should be dismissed.

For the avoidance of doubt, Section 15.01 also expressly precludes recovery of "loss of profit or any other consequential damages," and defines "consequential damages" to include the specific categories of loss sought in the Complaint.  *See Roneker v. Kenworth Truck Co.*, 977 F. Supp. 237, 240 (W.D.N.Y. 1997) (enforcing limitation of liability clause as to specific categories of damages because "the parties have gone a long way in defining the scope of

consequential damages in the contract itself") (internal marks and citations omitted).  This provides additional grounds to dismiss Count I.  Specifically:

*First*, the claim for "cost of resources and manpower" associated with consuming the marine fuel and additional maintenance of the Vessel's engines and fuel systems are consequential damages under New York law.  *See Am. Dredging Co. v. Plaza Petroleum*, 799 F. Supp. 1335, 1339 (E.D.N.Y. 1992) (damage to vessel, engines and fuel systems caused by marine fuel were consequential losses barred by contract), *vacated on other grounds*, 845 F. Supp. 91 (E.D.N.Y. 1993); *Roneker*, 977 F. Supp. at 240–41 (repair and maintenance costs are consequential damages).  These alleged losses are also specifically barred under the Contract as "damage to Buyer's Vessel" and "crew wages."  (Ex. B. §§ 15.01, 15.02).

*Second*, the claims for losses and costs for purchasing additional fuel in Japan are barred as "increased costs or expenses in obtaining replacement fuel."  (Ex. B. §15.01).

*Third*, the claims for sampling, testing or other investigation concerning the marine fuel are consequential damages.  *See PNC Bank, N.A. v. Wolters Kluwer Fin. Servs.*, 73 F. Supp. 3d 358, 374 (S.D.N.Y. 2014) (claims for investigation expenses after alleged breach of contract were consequential as a matter of law) (collecting cases).  Those test costs were also specifically allocated to the Plaintiff, which acknowledged and warranted its "responsibility to test the Product delivered."  (Ex. B. § 15.02).

*Finally*, the alleged losses associated with de-bunkering in Singapore are not recoverable.  The claim for de-bunkering and disposal costs are not "the difference in value of the Product and goods actually supplied," which are the only potentially recoverable loss under the Contract.  (Ex. B. § 15.01).  The "loss of hire" damages based on profits allegedly

lost because the Vessel was unable to take additional charter hires during the de-bunkering operation (Compl. ¶ 17) are barred for the same reason, and also specifically barred as claims involving "lost profits," "contracts and/or prospective contracts" and "charter hire." (Ex. B. § 15.01).

In sum, all of the damages that Plaintiff seeks are prohibited by the Contract. For this additional reason, Count I should be dismissed.

### III. At a Minimum, Count I Should Be Dismissed to the Extent It Seeks Damages In Excess of $50,000

For the reasons set forth above, Count I should be dismissed in its entirety. However, at a minimum, the Court should dismiss Count I to the extent it seeks to recover losses that "exceed the amount of $50,000," in violation of Section 15.01 of the T&Cs. (Ex. B § 15.01).

This damages cap is enforceable pursuant to N.Y. U.C.C. § 2-719, and should be enforced at the pleading stage. *See* N.Y. U.C.C. § 2-719(1)(a) ("the agreement . . . may limit or alter the measure of damages recoverable . . ."); *see also DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 318 (S.D.N.Y. 2002) (dismissing allegations seeking recovery in excess of contractual limitation on amount of recoverable damages) (collecting cases); *Pacs Indus., Inc. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570, 573 (E.D.N.Y. 2000) (dismissing portion of plaintiff's breach of contract action that sought damages in excess of contractual limitation).

Accordingly, Count I should be dismissed to the extent it seeks damages over $50,000.

**CONCLUSION**

OceanConnect respectfully requests that Count I be dismissed or, in the alternative, that Count I be dismissed to the extent it seeks damages in excess of $50,000.

Dated: New York, New York
October 2, 2020

Respectfully submitted,

HERBERT SMITH FREEHILLS
NEW YORK LLP

By: /s/ *Peter J. Behmke*
Peter J. Behmke
Michael P. Jones
Barron M. Flood
450 Lexington Avenue
New York, New York 10017
Tel: (917) 542-7600
Fax: (917) 542-7601
Email: Peter.Behmke@hsf.com
Michael.Jones@hsf.com
Barron.Flood@hsf.com

*Attorneys for OceanConnect Marine, Inc.*