UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| SEAPOINT SHIPPING, LTD., | : | |
| Plaintiff, | : | 20 Civ. 6908 (JMF) |
| - against - | : | |
| OCEANCONNECT MARINE, INC. and MINERVA BUNKERING (USA) LLC, | : | |
| Defendants. | : | |

---

## AMENDED VERIFIED COMPLAINT

Plaintiff SEAPOINT SHIPPING LTD ("Seapoint" or "Plaintiff"), by its attorneys, Tisdale Law Offices, LLC, alleges, upon on information and belief, the following:

### THE PARTIES

1. Plaintiff Seapoint, is a company organized and existing under foreign law with an agent with an office at 10-12, Kifisias Avenue, Marousi, 151 25 Athens, Greece.

2. At all material times, Seapoint was the owner of the MV "CAPTAIN X. KYRIAKOU" ("Vessel"), a crude oil tanker, IMO Number 9602928. Athenian Sea Carriers, Ltd. ("Athenian Sea Carriers") was at all material times, the commercial and technical manager of the vessel.

3. Defendant OceanConnect Marine, Inc. ("OceanConnect") is a company organized under the laws of a foreign country with an office located at 18th Northburgh Street, London EC1V OJR United Kingdom and was at all material times, a supplier of fuel (bunkers) to ocean going vessels.

4. Defendant Minerva Bunkering (USA) LLC, ("Minerva") is a company organized under the laws of a foreign country with an office and place of business at 52 Vanderbilt Ave.,

Suite 1405 New York, New York, 10017 and was at all material times a supplier of fuel (bunkers) to ocean going vessels.

5. Defendants, OceanConnect, and Minerva are collectively referred to herein as "Defendants."

## VENUE AND JURISDICTION

6. This matter arises out of the breach of a maritime contract as well as a maritime tort. This Court has admiralty subject matter jurisdiction under 28 U.S.C. §1333. This matter also falls within the scope of Rule 9(h) of the Federal Rules of Civil Procedure.

7. Venue is proper in this Court because of the parties' places of business and OceanConnect's venue selection provisions. Further, pursuant to 28 U.S.C. § 1391(b) Defendant Minerva resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

8. On December 23, 2019, Athenian Sea Carriers contacted OceanConnect on behalf of the Plaintiff to arrange the purchase of bunker fuel for the Vessel.

9. OceanConnect agreed to sell 3,300MT Very Low Sulfur Fuel Oil ("VLSFO") and 80-100MT Low Sulfur Marine Gas Oil ("LSMGO") for delivery to the Vessel at the LOOP facility in Houston, Texas. In turn and unbeknownst to Plaintiff, OceanConnect purchased the bunkers from Minerva which were to be delivered to Plaintiff's Vessel on OceanConnect's behalf.

10. On or about January 12, 2020, Defendants delivered bunker fuel to Plaintiff's Vessel at LOOP in Houston, TX.

11. More particularly, on January 12, 2020, the Vessel received 3,140MT of VLSFO and 83MT of LSMGO, the cost of which has been paid in full by Athenian Sea Carriers.

12. During the course of loading the fuel, samples were taken of the fuel from the delivery barge by Minerva. One of the samples was placed on board the Vessel. In addition, other drip samples were drawn from the Vessel's manifold.

13. On January 29, 2020, the drip samples taken from the Vessel were tested at a lab in Athens, Greece. The results revealed that the bunkers were off-spec because the fuel contained higher than normal TSP, total sediment potential. The TSP levels measure and indicate the stability and cleanliness of the fuel. When the fuel's TSP levels exceed specification, the fuel can become unstable and cause serious damage to the Vessel's equipment. This was the first time that Plaintiff became aware of the non-compliant bunkers supplied by Defendants since the Defendants never disclosed the fuel's TSP levels prior to supplying the fuel to the Plaintiff.

14. Routine tests would have indicated elevated TSP levels in the fuel. Therefore, upon information and belief, at no time prior to loading the fuel onboard the Vessel did Defendants perform such tests which would have indicated the TSP levels.

15. On January 29, 2020, Athenian Sea Carriers informed OceanConnect of the drip sample results and OceanConnect then informed Minerva that the bunker fuel they had supplied did not comply with the specifications.

16. When the results were received, the Vessel was on route from Texas to Japan to discharge its cargo. Because there was no other reasonable alternative, under the instruction of the lab, the crew made extraordinary efforts during the voyage to treat and burn the off-spec bunkers for as long as the bunkers remained sufficiently stable to do so, in order to mitigate damages.

17. Between February 8, 2020 to April 3, 2020, the Vessel consumed off-spec VLSFO fuel until approximately 300 MT remaining on board ("ROB") which could not be burned.

18. Ultimately it was determined that the remaining 300MT of fuel could not be safely burned and the Vessel was instructed to de-bunker and replace the fuel in Singapore. The Vessel had to load additional fuel at Nagoya, Japan in order to safely sail to Singapore where the Defendants instructed the Vessel to proceed to de-bunker the remaining 300MTS of off-spec fuel into their agent's barge and re-bunker the Vessel. When the Vessel arrived at Singapore, the Master and Athenian Sea Carriers learned that the bunker barge appointed by Defendants was unlicensed and operating outside of the local law. As a result, Athenian Sea Carriers had no option but to appoint its own barge to debunker the Vessel and destroy the remaining 300MTS of VLSFO, all the while losing time from gainful employment.

19. Since the Defendants failed to test or otherwise disclose the fuel's TSP before supplying it to Plaintiff, Plaintiff had no knowledge of the issue until January 29, 2020 when the Vessel was underway. It was impossible for Plaintiff notify either Defendant within 7 days of the stem since the test results took weeks to obtain.

20. Due to the nature of the shipping industry and standard business practices, it would have been totally unfeasible for the Vessel to wait at the port where it took on fuel until the test results were received.

21. Rather, it was Defendants' responsibility to test the fuel before it was delivered to the Vessel so that Plaintiff would receive what it ordered: compliant, stable, and clean fuel.

22. As examples of the effects of the sub-standard fuel provided by Defendants, after the fuel was delivered, Plaintiff was required to flush filters every 2-3 days which normally needed to be flushed every 3 months, the Vessel's fuel oil transfer pump filter was clogged every 3-4 days instead of every month, overhauls of pumps were required, and oily bilge pumps were clogged.

These are just a few examples of actions which Plaintiff needed to take in furtherance of its efforts to mitigate the damages.

23. OceanConnect markets itself as one of the world's largest and most experienced independent marine energy service and solutions providers.

24. Minerva markets itself as a provider of energy to marine vessels around the world and states that it provides end-to-end service and physically supplies fuels in locations most important to its customers.

25. As sophisticated worldwide entities engaged in the bunker supply business, Plaintiff was entitled to rely on these representations and upon the experience of both Defendants in providing clean and stable fuel to the Vessel.

26. Both Defendants knew the ramifications of supplying sub-standard, non-compliant fuel to the Plaintiff and Plaintiff's Vessel.

27. As a result of Defendants' negligence, gross negligence, misrepresentation and/or breach of contract, Plaintiff suffered extensive damages, much of which was incurred in mitigation of potentially far greater damages, no part of which has been paid although duly demanded, totaling $677,472.67, made up of the following:

| | |
|---|---|
| COST OF RESOURCES AND MANPOWER: | $ 245,499.87 |
| LOSS OF TIME/COST DIFFERENTIAL FOR ADDITIONAL BUNKERS IN NAGOYA: | $ 19,279.75 |
| COST OF INTERMEDIATE SAMPLE LOADING AT CAPE TOWN: | $ 5,257.51 |
| COST OF ROB OFF-SPEC QUANTITY DE-BUNKERED: | $ 221,874.00 |
| COST OF SLOPS/SLUDGE DISPOSAL IN SINGAPORE: | $ 21,007.92 |
| LOSS OF HIRE IN SINGAPORE (SUPPLIERS' FAILURE TO ORGANIZE DE-BUNKERING): | $ 159,633.62 |

| | |
|---|---|
| COST OF LAB ATTENDANCE AT JOINT SAMPLING: | $ 4,920.00 |
| TOTAL COST WITHOUT INCLUDING RISK OF VOYAGE: | $ 677,472.67 |

## COUNT ONE
### Breach of Contract Against OceanConnect

28. Plaintiff incorporates the allegations made in Paragraphs 1-27 as if more fully stated at length herein.

29. At all material times Plaintiff contracted with OceanConnect to provide bunker fuel for the Vessel.

30. OceanConnect failed to provide bunker fuel that met the specifications which were agreed by the parties.

31. As a result of OceanConnect's breach of the agreement, Plaintiff suffered damages totaling $ 677,472.67, exclusive of attorney's fees and interest, no part of which has been paid although duly demanded.

## COUNT TWO
### Negligence Against Minerva

32. Plaintiff incorporates the allegations made in Paragraphs 1-27 as if more fully stated at length herein.

33. Minerva, as the physical supplier of the bunker fuel purchased by the Plaintiff, had a duty to provide fuel which was not defective or harmful to the Vessel's machinery. OceanConnect selected Minerva to serve as physical supplier of the fuel.

34. In breach of this duty, Minerva delivered fuel which did not satisfy the specifications or industry standards, and which could not be used except with extraordinary effort and cost.

35. Minerva had a duty to provide the fuel specified by Plaintiff and in conformity with industry standards.

36. Minerva failed to provide fuel to Plaintiff that was suitable to burn and met the specifications generally accepted in the industry.

37. As a result of Minerva's negligence by its failure to deliver fuel that met the specifications, Plaintiff suffered extensive damages totaling $677,472.67, exclusive of attorney's fees and interest, no part of which has been paid although duly demanded.

## COUNT THREE
### Misrepresentation Against Minerva

38. Plaintiff incorporates the allegations made in Paragraphs 1-27 as if fully stated at length herein.

39. Minerva was contracted by OceanConnect to be the physical supplier of the bunker fuel purchased by the Plaintiffs.

40. Minerva represented to Plaintiff that the bunker fuel delivered to Plaintiff's Vessel met the specifications agreed to between the Parties. Plaintiff relied on those representations and allowed the off-spec fuel to be loaded aboard the Vessel.

41. As a result of Minerva's misrepresentation by its failure to deliver fuel that met the specifications, Plaintiff suffered extensive damages totaling $677,472.67 exclusive of attorney's fees and interest, no part of which has been paid although duly demanded.

## COUNT FOUR
### Gross Negligence Against Minerva

42. Plaintiff incorporates the allegations made in Paragraphs 1-27 as if more fully stated at length herein.

43. Minerva, as the physical supplier of the bunker fuel purchased by the Plaintiff, had a duty to provide fuel which was not defective or harmful to the Vessel's machinery.

44. In breach of this duty, Minerva delivered fuel which did not satisfy the specifications or industry standards, and which could not be used except with extraordinary effort and cost.

45. Minerva had a duty to provide the fuel specified by Plaintiff and in conformity with industry standards.

46. Minerva did not test the fuel for TSP or make any effort to ascertain whether the fuel met specifications before it delivered the non-compliant fuel to Plaintiff.

47. This failure to ascertain whether the fuel satisfied the specifications and/or industry standards constitutes an extreme departure from the applicable standard of care and wanton disregard for Plaintiff's interests and safety.

48. Minerva's grossly negligent acts and omissions caused Plaintiff damages in excess of $677,472.67.

## COUNT FIVE

### Gross Negligence Against OceanConnect

49. Plaintiff incorporates the allegations made in Paragraphs 1-27 as if more fully stated at length herein.

50. OceanConnect agreed with Plaintiff to arrange for the delivery of fuel to the Vessel which complied with certain specifications.

51. Unbeknownst to Plaintiff, OceanConnect hired Minerva to physically supply the fuel to the Vessel.

52. OceanConnect made no effort to ensure that the fuel actually provided to the Plaintiff's Vessel complied with the specifications.

53. As a party with ample experience in the international bunker supply business, OceanConnect knew about the severe consequences of high TSP levels in bunker fuel and had a duty to ensure its sub-contractors exercised a minimal level of due diligence.

54. OceanConnect's failure to make any effort to ensure that the fuel Minerva supplied to the Vessel complied with the specifications constitutes a breach of this duty and an extreme departure from the applicable standard of care and wanton disregard for Plaintiff's interests and safety.

55. OceanConnect's grossly negligent acts and omissions caused Plaintiff damages in excess of $677,472.67.

## RULE B MARITIME ATTACHMENT

56. Plaintiff incorporates the allegations made in all the foregoing Paragraphs as if more fully stated at length herein.

57. Given the factual background set out above, Defendants are liable in damages to Plaintiff in the amount of $677,472.67 plus interest and costs.

58. Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court. Upon information and belief, Defendants hold bank accounts or other assets or property within the jurisdiction of this Court to be disclosed more fully in future pleadings.

59. Pursuant to the practice of this Court, Plaintiff is entitled to security of 150% of the claim amount, or $1,016,209.00.

60. The Plaintiff will separately seek an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendants held by any garnishees within the District for the purpose of obtaining security for the soon to be commenced arbitration proceedings.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint, failing which default judgment be entered against it in the sum of **$677,472.67**;

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, funds, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$1,016,209.00** belonging to, due or being transferred to, from, or for the benefit of the Defendants including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint.

C. That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

D. That the Plaintiff have such other, further and different relief as the Court deems just, proper and equitable.

Dated: October 23, 2020
      New York, NY

Respectfully submitted,
Attorneys for Plaintiff,

By:    /s/ Thomas L. Tisdale
Thomas L. Tisdale (TT5263)
Tisdale Law Offices, LLC
200 Park Avenue, Suite 1700
New York, NY 10166
Tel: 212-354-0025
*ttisdale@tisdale-law.com*

## ATTORNEY'S VERIFICATION

Timothy J. Nast, an attorney duly authorized to practice before this Honorable Court, under the penalty of perjury of the laws of the United States, declares as follows:

1. My name is Timothy J. Nast.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney at Tisdale Law Offices, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

8. The foregoing is true and correct under penalty of perjury of the laws of the United States of America.

Dated: October 23, 2020
       Southport, CT

_____
Timothy J. Nast

## CERTIFICATION OF SERVICE

I hereby certify that on October 23, 2020 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

                                         /s/ Thomas L. Tisdale
                                 Thomas L. Tisdale